Kermit CESAR, Appellant,

v.

The ALASKA WORKMEN'S COMPENSA-
TION BOARD, consisting of B. G. John-
son, Louis H. Shaffer, and A. D. Wallace,
Carson Lawrence d/b/a Carson's Bakery,
and Employer's Liability Assurance Corpo-
ration, Appellees.

No. 281.

Supreme Court of Alaska.

July 12, 1963.

R. J. Annis, of Robertson, Monagle, Eastaugh & Annis, Juneau, for appellant.

F. M. Doogan, of Faulkner, Banfield, Boochever & Doogan, Juneau, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This action was instituted in the superior court by the appellant, Kermit Cesar, to set aside as not in accordance with law an order of the Alaska Workmen's Compensation Board awarding him compensation in the sum of $900 for the loss of one-half of his left thumb. He claimed that under the applicable provisions of the Alaska Workmen's Compensation Act [1] he was entitled to an award of $1800. The superior court affirmed the award of the Board and Cesar has appealed to this court.

The parties seem to agree that the following provisions of the Alaska Workmen's Compensation Act (hereinafter referred to as the act) are applicable in determining the amount of compensation which the appellant is entitled to receive in this case:

"Sec. 7.  Compensation for Disability.  Compensation for disability shall be paid to the employee as follows:

\*    \*    \*    \*    \*    \*

"(3) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 65 per centum of the average weekly wages which shall be in addition to compensation for temporary total disability or temporary partial disability paid in accordance with subdivision (2) or subdivision (4) of

1. S.L.A.1959, ch. 193, §§ 7(3) (f) and 7 (3) (m) [AS 23.30.190(6), (13)].

this section respectively and shall be paid to the employee as follows:

\* \* \* \* \* \*

"(f) Thumb lost, fifty-one weeks' compensation, not to exceed $1,800.00.

\* \* \* \* \* \*

"(m) Phalanges: Compensation for loss of more than one phalange of a digit shall be the same as for loss of the entire digit. Compensation for loss of the first phalange shall be one-half of the compensation for loss of the entire digit."

The appellant contends that the foregoing provisions of the act frame benefits thereunder in terms of weekly compensation[2] and not in terms of a fixed dollar amount for a specific scheduled loss. By way of contrast he calls attention to the previous Alaska Workmen's Compensation Act, which made no reference to weeks of compensation when providing for scheduled benefits in cases of permanent partial disabilities but spoke only of benefits for the loss of members, or parts thereof, in terms of fixed monetary sums.[3]

Under his interpretation of the provisions of the present act, quoted above, the appellant contends that the formula for determining compensation in his case should be 65 per cent of his average weekly wage multiplied by one-half of 51 weeks, but not to exceed $1800. The Board found the appellant's average weekly wage to be "at least $120.00 a week" and the appellant concedes that his actual average weekly wage was $115. Applying the formula

thus: 65% of $115 x ½ of 51, the appellant arrives at a compensation figure of $1906.25, which sum he is agreeable to have reduced to what he considers the statutory maximum of $1800.

The Board and the insurer of Cesar's employer, as appellees, disagree with the appellant and insist that the act requires compensation for rated disabilities scheduled in section 7(3) partial in character but permanent in quality, to be computed in proportion to maximum compensation recoverable for permanent total loss or permanent total loss of use. To sustain their position they rely upon subsections (q) and (r) of section 7(3) of the act [AS 23.30.190(18) and (19) respectively], which read:

"(q) Total loss of use: Compensation for permanent total loss of use of a member shall be the same as for loss of the member.

"(r) Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member."

■ After hearing testimony and argument of counsel, in which the appellant stated his position in much the same form that he followed later in the superior court and before us, the Board concluded that "the more reasonable interpretation of Sec. 7(3) (f) and (m) is that applicant's [appellant's] compensation should be one-half of fifty-one weeks not to exceed one-half of $1,800.00." Continued the Board:

"[T]here is no convincing reason to assume that the adjective 'one-half'

---

2. In support of his claim that it was the intent of the legislature to cast benefits in terms of weekly compensation rather than in terms of a fixed sum, the appellant points to § 7(3) (t) of the act [AS 23.30.190(20)] which provides that "in all other cases" of permanent partial disability, not provided for under scheduled benefits of § 7(3), "the compensation shall be 65 per centum of the difference between his [the injured workman's] average weeky wages and his wage-earning capacity thereafter in the

same employment or otherwise." He also points out that in case of *temporary partial disability* resulting in decrease of earning capacity § 7(5) [AS 23.30.200] similarly provides that "compensation shall be 65 per centum of the difference between the injured empoyee's average weekly wages before the injury and his wage earning capacity after the injury in the same or another employment."

3. Section 43–3–1 A.C.L.A.1949, as amended by S.L.A.1953, ch. 60.

does not modify the entire clause including the set maximum. Accordingly, applicant is entitled to one-half of the maximum for the loss of the entire thumb: $900.00."

We hold that the Board was correct in its decision in this case and that the trial court committed no error in affirming the $900 award. In providing scheduled benefits for permanent partial disabilities under the present Alaska act, our legislature adopted almost verbatim comparable provisions in the federal Longshoremen's and Harbor Workers' Compensation Act, which ground benefits on weeks of compensation.[4] There is a significant distinction, however. The Alaska act limits not only the period of weeks compensable as in the federal act but it superimposes an additional limitation in terms of a maximum monetary amount compensable for each type of loss. Thus 33 U.S.C.A. § 908(c) (6) states, "Thumb lost, seventy-five weeks' compensation"; whereas section 7(3) (f) of the Alaska act reads, "Thumb lost, fifty-one weeks' compensation, *not to exceed $1,800.00*." [Emphasis added.]

We have been unable to find a workmen's compensation statute of any other American jurisdiction which contains a fixed maximum monetary limit for each particular scheduled loss of a member resulting in permanent partial disability. That being so, the cases from other jurisdictions cited by the parties in this case to support their respective views on how we should interpret the provisions of section 7(3) of our act while informative have not been particular-

ly helpful in deciding the issue here involved.

Since our act is modeled after the Longshoremen's and Harbor Workers' Compensation Act, we would have considered the federal act persuasive in construing comparable sections of our act. But the legislature in section 7(3) (f) of our act went beyond the scope of 33 U.S.C.A. § 908(c) (6) by adding a fixed limit payable for the loss of a thumb and thus indicating a difference in legislative intent.[5] Hence no federal court decision would be in point on the issue raised in the instant case.[6]

Reading subdivisions (f) and (m) of section 7(3) in conjunction with subdivision (r) of that section, we are of the opinion that the legislature intended that the express top monetary limit placed on the loss of a whole thumb should be proportionately applied in the case of loss of less than the whole. Initially, where there has been a partial loss of a rated member, the statutory formula based on weeks of compensation must be used. If the amount of compensation arrived at by fitting the figures of a particular case into the formula exceeds the amount of compensation obtained by multiplying the statutory monetary maximum by the percentage of loss, then the award must be for the latter amount. If the result obtained by the formula is less than the proportionate monetary limit, then the formula result is the compensation payable.

The judgment is affirmed.

4. See 33 U.S.C.A. §§ 901, 908(c) (1957).

5. Chicago Corp. v. Munds, 20 Del.Ch. 142, 172 A. 452, 454 (1934).

6. See Martin v. American Potash & Chem. Corp., 33 Del.Ch. 234, 92 A.2d 295, 300, 35 A.L.R.2d 1140 (1952); and cf. Bursey's Case, 325 Mass. 702, 92 N.E.2d 583, 586 (1950).