**Matthew L. WYATT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–2105.**

Court of Appeals of Alaska.

Sept. 8, 1989.

Marcia E. Holland, Asst. Public Defender, Fairbanks, and John Salemi, Acting Public Defender, Anchorage, for appellant.

Robert D. Bacon, Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Matthew L. Wyatt was convicted by a Ketchikan jury of assault in the third degree for an incident that occurred in the village of Metlakatla. Wyatt appeals, contending that the trial court erred in failing to instruct the jury that reasonable fear is a necessary element of third-degree assault. Wyatt also contends that residents of Metlakatla were improperly excluded from his jury panel. We affirm.

Wyatt was convicted of third-degree assault under AS 11.41.220(a)(1), which prohibits a person from "recklessly plac[ing] another person in fear of imminent serious physical injury by means of a dangerous instrument." Wyatt was charged as the result of an incident in which he threatened a police officer with a chain saw. As the officer was not actually injured, the issue before the jury was whether he was placed in fear of serious physical injury. Before the case was submitted to the jury, Wyatt asked for an instruction requiring the jury to find that the officer's fear of injury was reasonable. The trial court refused to give the proposed instruction but allowed Wyatt to argue his point to the jury.

■ On appeal, Wyatt contends that the trial court's refusal to give his proposed instruction was error. He relies on the common law concept of assault, which required the victim's fear of injury to be reasonable. Wyatt notes that, in *Menard v. State*, 578 P.2d 966, 970–71 (Alaska

1978), the Alaska Supreme Court held that reasonable fear was not a requirement where an assault resulted in actual injury to the victim; however, the court left open the issue of whether reasonable fear would be required in cases such as Wyatt's, where no injury occurred.

*Menard*, however, was decided under Alaska's former assault statute. Under the revised Alaska Criminal Code, Wyatt's proposed instruction on reasonable fear was superfluous. To convict Wyatt of third-degree assault, the jury was required to find, *inter alia*, that he recklessly placed his intended victim in fear. AS 11.41.-220(a)(1). Before finding that Wyatt acted recklessly, the jury would have had to have been convinced that he was aware of and consciously disregarded a substantial and unjustifiable risk that his conduct would place another person in fear of imminent serious physical injury. *See* AS 11.81.-900(a)(3).[1]

Had the jury been in doubt as to the reasonableness of the victim's fear, it would have had no basis for finding that Wyatt's conduct created a substantial and unjustifiable risk of placing his victim in fear. Accordingly, given the applicable definition of recklessness, the jury could not rationally have found that Wyatt acted recklessly without simultaneously concluding that the victim's fear was reasonable. Under the circumstances, particularly because the trial court allowed Wyatt to argue his point to the jury, there was no need for a special instruction that reasonable fear was an element of third-degree assault.

■ Wyatt's remaining claim is that residents of Metlakatla, the community in which the offense was committed, were improperly excluded from the jury panel. Wyatt contends that this exclusion deprived him of a jury representing a fair

---

1. AS 11.81.900(a)(3) defines "recklessly" as follows:

(3) a person acts "recklessly" with respect to a result or to a circumstance described by a provision of law defining an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance

exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation; a person who is unaware of a risk of which the person would have been aware had that person not been intoxicated acts recklessly with respect to that risk.

cross-section of the community. *See Alvarado v. State,* 486 P.2d 891, 897–98 (Alaska 1971).

Citizens of Metlakatla were excluded from Wyatt's jury pool because of the expense and inconvenience of housing Metlakatlans in Ketchikan for the duration of Wyatt's trial. The superior court's order excluding Metlakatla from the jury selection process appears to have been entered in substantial compliance with Alaska Criminal Rule 18 and Alaska Administrative Rule 15(c)(2). *See Tugatuk v. State,* 626 P.2d 95, 98–99 (Alaska 1981).

Wyatt contends, however, that even if the superior court's order conformed with applicable rules, exclusion of Metlakatla residents from his jury violated his constitutional right to an impartial jury and was impermissible under *Alvarado v. State.* Wyatt notes that he is a resident of Metlakatla and that his offense was alleged to have been committed in that community. He contends that residents of Metlakatla comprise a distinct class and differ significantly from residents of other Alaska Native villages. In support of this contention, Wyatt points to *Atkinson v. Haldane,* 569 P.2d 151, 153–56 (Alaska 1977), which discusses Metlakatla's unique tribal system of government.

To prevail on his constitutional claim, it was incumbent upon Wyatt to establish, among other things, that Metlakatlans comprise "a 'distinctive' group in the community." *Tugatuk v. State,* 626 P.2d 95, 100 (Alaska 1980). To make this showing, Wyatt was required to prove that Metlakatlans share "a basic similarity in attitudes or ideas or experience which ... cannot be adequately represented if the group is excluded from the jury selection process...."

*Id.* at 100 n. 7 (quoting *Hampton v. State,* 569 P.2d 138, 148 (Alaska 1977)).

Apart from noting Metlakatla's unique status as a tribal reservation, however, Wyatt made no attempt to meet his burden of proof. The superior court concluded that "there is no showing whatever that Metlakatlans have an outlook distinct from other Alaska Natives that must be represented on the jury for the fair administration of justice." On the record of the present case, the court's finding is not clearly erroneous. The superior court did not err in finding that Wyatt had failed to sustain his burden of proof under *Tugatuk.*[2]

The judgment is AFFIRMED.

---

**2.** Wyatt argues that the burden established in *Tugatuk v. State* does not apply to claims arising under *Alvarado v. State,* which involved a vicinage issue: exclusion of the community in which the offense was alleged to have occurred from the jury selection process. However, *Alvarado* refused to adopt an inflexible rule requiring the community in which an offense allegedly occurred to be included in the jury selection process. *See Alvarado,* 486 P.2d at 902–04. The holding in *Alvarado* was based on extensive evidence establishing that residents of Alaska Native villages differ profoundly from Alaska's urban residents on historical, economic, racial, cultural and political grounds. Although *Tugatuk* did not involve a vicinage issue under *Alvarado,* nothing in that case suggests that the burden of proof it establishes would be inapplicable to claims arising under *Alvarado.* To the contrary, the language of *Tugatuk* delineating the defendant's burden of proof applies, on its face, to all claims of "constitutional error in the jury selection process...." *Tugatuk,* 626 at 100.